UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
JULIO GONZALEZ GUARDADO,

                Petitioner,

                -against-

RAUL MALDONADO JR. *et al.*,

                Respondents.
------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
26-CV-1170 (OEM)

ORELIA E. MERCHANT, United States District Judge:

On February 27, 2026, Petitioner Julio Gonzalez Guardado ("Petitioner") commenced this habeas corpus action against Respondents Raul Maldonado Jr., in his official capacity as Warden of the Metropolitan Detention Center in Brooklyn, New York ("MDC Brooklyn"); Judith Almodovar, in her official capacity as Acting New York Field Office Director for U.S. Immigration and Customs Enforcement ("ICE"); Pamela Bondi, in her official capacity as Attorney General of the United States; Kristi Noem, in her official capacity as Secretary of Homeland Security; and Todd Lyons, in his official capacity as Acting Director of ICE (collectively, "Respondents"). Petitioner seeks his immediate release pursuant to 28 U.S.C. § 2241, challenging the lawfulness of his ongoing detention by ICE as a violation of his due process rights under the Fifth Amendment of the U.S. Constitution ("Fifth Amendment"). *See* Emergency Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, Dkt. 1 ("Petition" or "Pet."). Petitioner was arrested by ICE on January 8, 2026, and is currently detained at MDC Brooklyn. *Id.* ¶ 7.

For the following reasons, Petitioner's request for release from custody is granted, and Respondents are ordered to immediately release Petitioner from custody.

# BACKGROUND[1]

Petitioner is a citizen of El Salvador. *Id.* ¶ 23; Declaration of Deportation Officer Dmitry Rousseau ¶ 1, Dkt. 7-1 ("Rousseau Decl."). Respondents contend that, on or about April 6, 2003, Petitioner entered the United States at an unknown location. Rousseau Decl. ¶ 3. He was not admitted or paroled after inspection by an immigration officer. *Id.* ¶ 3. Petitioner does not contest that he entered the United States at an unknown location, however, he contends that he entered the country "without being admitted or paroled in or around 2006" after surviving "a brutal attack by members of the MS-13 gang in El Salvador." Pet. ¶ 23. Petitioner has "continuously resided in Queens, New York," since, *id.* ¶ 24, where he works in construction, attends church, and "us[es] most of his salary to send money to support his family and their neighbors back in El Salvador," *id.* ¶ 42.

Petitioner has been incarcerated by ICE since January 8, 2026. *See* Pet. ¶¶ 25-33; Rousseau Decl. ¶¶ 4-10. The parties disagree about the manner of his arrest.

Petitioner describes a forcible arrest, in which "five unmarked, black vehicles suddenly pulled into the parking lot" of a Home Depot in Nassau County, New York, on the morning of January 8, 2026, around 7:30 a.m. Pet. ¶¶ 25-26. Petitioner had been waiting there to meet his employer. *Id.* ¶ 25. These cars surrounded him, and "[m]ultiple armed men jumped out . . . and started heading towards him." *Id.* ¶ 26. Petitioner asserts that he "did not understand who they were, as none of them identified themselves," and that he "thought that he was being kidnapped." *Id.* ICE officers forcibly restrained him, "pointed a gun to his head," and searched him. *Id.* ¶ 27. "The officers then handcuffed him and threw him into one of the vehicles, 'like an animal.'" *Id.*

---

[1] The facts of this case are undisputed unless otherwise indicated.

¶ 29 (quoting Pet., Exhibit 1 ¶ 17, Dkt. 1-2).  They did not explain why he was being arrested.  *Id.* ¶ 30.

By contrast, Respondents assert that ICE officers observed Petitioner in a parking lot in Elmont, New York, on January 8, 2026, and that he "matched the description of their primary target."  Rousseau Decl. ¶ 4.  ICE officers then "approached Petitioner, identified themselves as ICE officers, and asked for identification."  *Id.*  Respondents claim Petitioner identified himself and allegedly "admitted that he had entered the United States illegally by crossing the border from Mexico years ago."  *Id.*  Petitioner was then "placed under arrest and transported to Nassau County ICE Intake located at 100 Carman Avenue, East Meadow, New York," where he was processed and served with  a Form 1-200, Warrant for Arrest of Alien, and a Form I-862, Notice to Appear.  *Id.* ¶¶ 4-5; *see* Notice to Appear at 1-3, Dkt. 7-2; Warrant for Arrest of Alien at 4, Dkt. 7-2.[2]  "Following processing, on January 8, 2026, Petitioner was [subsequently] transferred through several facilities" and was ultimately sent to MDC Brooklyn on January 22, 2026, where he remains to this day.  Rousseau Decl. ¶¶ 7-10.

Prior to this incident, Petitioner alleges, and Respondents do not contest, that he "had never been arrested nor [did] he have any convictions."  Pet. ¶ 24.  Petitioner additionally asserts, and Respondents likewise do not contest, that Petitioner received no bond hearing or individualized assessment as to his dangerousness or flight risk.  *Id.* ¶¶ 45, 70; Letter from Petitioner to the Court at 1 (Mar. 7, 2026), Dkt. 9 ("Reply").

---

[2] Citations to the Notice to Appear, Dkt. 7-2, and the Warrant for Arrest of Alien, Dkt. 7-2,  are to the page numbers contained in the automatically generated ECF header.

**DISCUSSION**

The instant Petition raises two principal issues: (1) whether Petitioner is detained under 8 U.S.C. § 1226 ("§ 1226") or 8 U.S.C. § 1225 ("§ 1225") and (2) whether Petitioner's Fifth Amendment due process rights have been violated.

**A.  Statutory Basis for Petitioner's Detention**

The Court is bound by a long line of U.S. Supreme Court precedent.  *See Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality."); *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law."); *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (stating that § 1225(b) governs "aliens seeking admission into the country," whereas § 1226(a) governs "aliens already in the country" who are subject to removal proceedings).  Thus, the Court's position on whether § 1226 or § 1225 applies in scenarios where a petitioner is detained after entering the country has not changed since deciding other 28 U.S.C. § 2241 immigration cases recently.  *See, e.g.*, *J.U. v. Maldonado*, 805 F. Supp. 3d 482 (E.D.N.Y. 2025); *Artiga v. Genalo*, 25-CV-5208 (OEM), 2025 WL 2829434 (E.D.N.Y. Oct. 5, 2025); *Lira Caceres v. Shanahan*, 26-CV-00016 (OEM), 2026 WL 233215 (E.D.N.Y. Jan. 28, 2026); *Singh v. Maldonado*, 26-CV-00019 (OEM), 2026 WL 233216 (E.D.N.Y. Jan. 29, 2026); *Sanchez Atz v. Noem*, 26-CV-00214 (OEM), 2026 WL 320238 (E.D.N.Y. Feb. 6, 2026); *Peralta Acuapan v. Bondi*, 26-CV-00384 (OEM), 2026 WL 507889 (E.D.N.Y. Feb. 24, 2026); *Monge-Campos v. Bondi*, 26-CV-1056 (OEM), 2026 WL 603516 (E.D.N.Y. Mar. 4, 2026).

4

The Court is not persuaded by the authorities provided by Respondents, and the parties agree that there are no distinguishing facts as to Petitioner in this case. *See* Reply at 1; Letter from Respondents to the Court at 4 (Mar. 5, 2026), Dkt. 7 ("Opposition" or "Opp'n").[3]  Therefore, this Court joins the majority of courts in finding that detention of the nature at issue here cannot be upheld under § 1225. *See Barco Mercado v. Francis*, 25-cv-6582 (LAK), 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (collecting cases).  Mandatory detention under § 1225 is inapplicable to Petitioner, and he is subject to discretionary detention under § 1226. *See J.U.*, 805 F. Supp. 3d, at 490 (noting the mutual exclusivity of § 1225 and § 1226).

### B. Due Process

The Court now turns to whether ICE's detention of Petitioner violates his due process rights.  The *Mathews* test governs this inquiry. *See Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (applying the three-factor balancing test outlined in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine the adequacy of process in the context of civil immigration confinement).  The determination of what procedures are required under the Fifth Amendment requires consideration of: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

---

[3] The Court notes that Respondents erroneously addressed their Opposition to Judge Ann Donnelly instead of the undersigned. *See generally* Opp'n.  However, in their letter and on the record at oral argument, Respondents acknowledged that this Court's decisions "would control the result in this case if the Court adheres to it." Opp'n at 4.

5

With respect to the first prong of the *Mathews test*, Petitioner invokes "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)).

With respect to the second prong of the *Mathews* test, the record demonstrates that no individualized determination was made prior to or contemporaneously with the decision to detain him on January 8, 2026.  Pet. ¶¶ 45, 70.  Respondents present no articulable facts as to why Petitioner is dangerous or a flight risk and indeed, at oral argument, they conceded that no individualized determination was made.  Therefore, ICE did not engage in the required deliberative process during the initial decision to strip Petitioner of his liberty interest, and the risk of erroneous deprivation of that interest is high.  *See Chipantiza-Sisalema v. Francis*, 25 Civ. 5528 (AT), 2025 WL 1927931, at *3 (S.D.N.Y. July 13, 2025) (stating that ICE must engage in a deliberative process prior to or contemporaneous with "the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause"); *Lopez v. Sessions*, 18 Civ. 4189 (RWS), 2018 WL 2932726, at *11 (S.D.N.Y. June 12, 2018) (finding a risk of erroneous deprivation where the petitioner was re-detained absent a change in circumstances, procedure, or evidentiary findings).

As to the third and final *Mathews* prong, "the Attorney General's discretion to detain individuals under 8 § U.S.C. 1226(a) [sic] is valid where it advances a legitimate governmental purpose," such as "ensuring the appearance of aliens at future immigration proceedings" and "preventing danger to the community." *Valdez v. Joyce*, 803 F. Supp. 3d 213, 218 (S.D.N.Y. 2025) (first quoting *Velasco Lopez*, 978 F.3d at 854; then quoting *Zadvydas*, 533 U.S. at 690).  Here, there is nothing in the record to suggest that Petitioner is a flight risk or a danger to the community. Pet. ¶ 24 (noting that Petitioner had never been arrested prior to the January 8, 2026, arrest by ICE).  The record indicates that Petitioner has lived in the United States for approximately 20 years

6

without incident.  *Id.* ¶¶ 24, 42-43.  Therefore, Respondents have failed to show a significant interest in his continued detention.

Taken together, Petitioner's ongoing detention violates his due process rights.  *See Valdez*, 803 F. Supp. 3d at 219; *Lopez*, 2018 WL 2932726, at *15.  Given the deprivation of Petitioner's liberty, the absence of any deliberative process prior to or contemporaneous with the deprivation, and the statutory and constitutional rights implicated, a writ of habeas corpus is the only form of relief and the most appropriate remedy.  *Valdez*, 803 F. Supp. 3d at 219; *Lopez*, 2018 WL 2932726, at *15.[4]

## CONCLUSION

For the foregoing reasons, Petitioner's request for immediate release from custody is granted.  Respondents are ordered to immediately release Petitioner from custody.  By March 11, 2026, Respondents shall certify compliance with this order by filing on the docket and noting specifically that Petitioner has been released.  Counsel for Petitioner may file an application for attorney's fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412, within the time provided by the Local Rules.

The Clerk of Court is respectfully directed to enter judgment in accordance with this order and close this case.

SO ORDERED.

_____*/s/*_____
ORELIA E. MERCHANT
United States District Judge

March 10, 2026
Brooklyn, New York

---

[4] Because the Court determines that Petitioner's detention violates his due process rights, it need not address his remaining claims.  *See, e.g.*, *Valdez*, 803 F. Supp. 3d at 217 n.4 (declining to address remaining APA and Immigration and Nationality Act claims after determining that the petitioner's detention violated due process).

7